**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL ALEJANDRO ZAVALA,
*Petitioner-Appellant*,

v.

RICHARD B. IVES, Warden,
*Respondent-Appellee.*

No. 13-56615

D.C. No.
2:13-cv-03603-JFW-E

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
August 4, 2014—Pasadena, California

Filed May 18, 2015

Before: Stephen Reinhardt, Kim McLane Wardlaw,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Reinhardt;
Partial Concurrence and Partial Dissent by Judge Callahan

## SUMMARY[*]

### Habeas Corpus

The panel reversed the district court's denial of federal prisoner Daniel Alejandro Zavala's 28 U.S.C. § 2241 habeas corpus petition claiming improper denial of sentencing credit, and remanded.

The panel held that when immigration officials detain an alien pending potential prosecution, the alien is entitled under 18 U.S.C. § 3585(b) to credit toward his criminal sentence; that an alien is entitled to credit for all time spent in Immigration and Customs Enforcement Agency detention subsequent to his indictment or the filing of formal criminal charges against him; and that where a factual dispute exists, the district court must hold an evidentiary hearing as to whether an alien's detention by ICE prior to the date of his indictment or the filing of criminal charges against him constituted detention pending prosecution.

The panel held that the district court erred when it denied Zavala sentencing credit for the post-indictment period during which ICE detained him pending criminal prosecution. The panel remanded for the district court to determine in the first instance whether and when during the pre-indictment period Zavala's detention status changed from detention pending deportation to detention pending potential prosecution. The panel held that, on remand, the government has the burden of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

proving that the pre-indictment detention was for the purpose of deportation rather than potential prosecution.

Concurring in part and dissenting in part, Judge Callahan agreed with the majority that under § 3585(b) an alien is eligible for credit for all time spent in ICE custody from the day he or she is indicted or criminally charged. She dissented from the majority's broader interpretation of § 3585 – that an alien is entitled to credit toward his criminal sentence for the period during which ICE detained the alien pending *potential* criminal prosecution.

## COUNSEL

Ashfaq G. Chowdhury (argued), Deputy Federal Public Defender; Sean Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Tritia L. Yuen (argued), Assistant United States Attorney; André Birotte, Jr., United States Attorney; Joseph B. Widman, Assistant United States Attorney, Chief, Riverside Branch Office, Riverside, California, for Respondent-Appellee.

## OPINION

REINHARDT, Circuit Judge:

Daniel Zavala seeks credit toward his criminal sentence under 18 U.S.C. § 3585(b), the sentencing credit statute, for two periods of time during which he was detained by the U.S. Immigration and Customs Enforcement Service (ICE) prior to the commencement of his criminal sentence for illegal reentry under 8 U.S.C. § 1326. We hold that where ICE detains an alien pending potential criminal prosecution, that detention constitutes "official detention" within the meaning of § 3585(b) and the alien is accordingly entitled to credit toward his criminal sentence.

### I.

On September 20, 2010, Zavala was transferred from state custody, where he had finished serving a state criminal sentence, into the custody of ICE. That same day, an ICE officer gave him a Form I-871, U.S. Department of Homeland Security Notice of Intent/Decision to Reinstate Prior Order, which Zavala signed.[1] The I-871 Form provided that ICE had determined that Zavala was subject to a prior order of removal entered on May 2, 2006, that he had previously been removed on May 3, 2006 pursuant to an order of removal, and that he illegally reentered the United States on or about July 14, 2009. Zavala signed the "Acknowledgment and

---

[1] We grant Zavala's unopposed motion to take judicial notice of the September 20, 2010 Form I-871 and the Record of Sworn Statement in Affidavit Form dated September 20, 2010, both of which documents were in Zavala's immigration file and were provided to him by the Government in these proceedings.

Response" section of the I-871 Form stating "I do not wish to make a statement contesting this determination."[2] The ICE officer accordingly reinstated the prior order of removal by signing the "Decision, Order, and Officer's Certification" section of Form I-871, which stated that "[h]aving reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the [Immigration and Nationality] Act." Although reinstatement of the prior order allowed ICE to remove Zavala from the country at any time from September 20, 2010 onward, ICE nonetheless continued to detain Zavala until October 6, 2010—sixteen days later.

On October 6, 2010, a grand jury in the District of Nevada returned an indictment charging Zavala with illegal reentry under § 1326. ICE then transferred Zavala into the custody of the United States Marshals Service (USMS), and Zavala was in USMS custody as of October 7, 2010. Sixty-two days later, on December 7, 2010, the United States District Court for the District of Nevada granted the Government leave to dismiss the unlawful reentry charge due to improper venue.

On December 10, 2010, following dismissal of the indictment for improper venue, Zavala was transferred from USMS custody back into ICE custody. Twelve days later, on

---

[2] Also on September 20, 2010, Zavala completed and signed an affidavit on a form provided by ICE admitting that he was a citizen of Mexico, that he had previously been deported, that he reentered the United States on foot from Mexico, and that he had not sought permission to reenter the United States.

December 22, 2010, a criminal action for illegal reentry under
§ 1326 was again brought against Zavala, this time in the
Central District of California, the proper venue, and he was
again transferred into USMS custody from ICE custody.

Pursuant to a plea agreement, Zavala was sentenced on
March 28, 2011 to 46-months' imprisonment and 3-years'
supervised release for illegal reentry under § 1326(a). In
calculating Zavala's entitlement to sentencing credit under
§ 3585(b) for time he spent in detention prior to the
commencement of his criminal sentence, the Bureau of
Prisons (BOP) granted Zavala credit for the two periods of
time during which USMS detained him—October 6, 2010
through December 10, 2010, and December 22, 2010 through
March 27, 2011.[3]

BOP denied Zavala sentencing credit, however, for the
two periods of time during which ICE detained him prior to
the commencement of his criminal sentence: (1) September
20, 2010 through October 5, 2010, when ICE detained him
after reinstatement of the removal order but before an
indictment was returned, hereinafter referred to as the "pre-
indictment period"; and (2) December 11, 2010 through
December 21, 2010, when ICE detained him between the
dismissal of the first indictment for improper venue and the
re-initiation of the criminal proceeding in the proper venue,
hereinafter referred to as the "post-indictment period."

---

[3] BOP, rather than the sentencing court, calculates the defendant's
entitlement to sentencing credit under § 3585(b) in the first instance. *See
United States v. Wilson*, 503 U.S. 329, 335 (1992). A defendant may then
challenge BOP's calculation—in other words, the execution of the
sentence—by filing a petition for a writ of habeas corpus under 28 U.S.C.
§ 2241. *See United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984).

On May 20, 2013, Zavala filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming improper denial of sentencing credit because he had "been in official custody of the federal government since September 20, 2010." A magistrate denied sentencing credit for both periods of detention by ICE, and the district court adopted in full the magistrate's report and recommendation. Zavala appealed.

## II.

Zavala contends that the district court erred in concluding that detention by immigration authorities *never* constitutes "official detention" within the meaning of § 3585(b), the statute governing the calculation of a term of imprisonment. We review the district court's denial of a habeas petition de novo, while we review any underlying factual findings for clear error. *Reynolds v. Thomas*, 603 F.3d 1144, 1148 (9th Cir. 2010), *abrogated on other grounds by Setser v. United States*, 132 S. Ct. 1463 (2012). We review questions of statutory interpretation de novo. *United States v. Thompson*, 728 F.3d 1011, 1015 (9th Cir. 2013); *Phoenix Mem'l Hosp. v. Sebelius*, 622 F.3d 1219, 1224 (9th Cir. 2010).

## A.

Title 18 U.S.C. § 3585 governs the calculation of the length of a federal criminal sentence.  Under the statute, a term of imprisonment begins "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." § 3585(a). The statute then provides that the defendant is entitled to sentencing credit for time spent in "official

detention" prior to the commencement of the term of imprisonment:

> Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

§ 3585(b). The statute does not define "official detention."

When interpreting a statute, "[w]e start, as always, with the language of the statute." *Williams v. Taylor*, 529 U.S. 420, 431 (2000). In so doing, "[w]e give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Id.* Under the plain text of the sentencing credit statute, when ICE detains an alien for the purpose of securing his presence at a potential criminal prosecution and the alien is indeed criminally prosecuted and sentenced, this period of detention by ICE is "as a result of the offense for which the sentence was imposed." § 3585(b)(1). The "as a result of" formulation denotes a causal relationship. When ICE detains

an alien pending a potential criminal prosecution, electing to defer deportation until the conclusion of such criminal proceedings (and often until after service of the criminal sentence), that period of ICE detention is causally attributable to the criminal offense rather than to ICE's authority to detain an alien pending deportation. Under the plain meaning of the words, detention is the holding of aliens in custody (which the immigration statutes expressly describe as "detention"),[4] and ICE is without question an official entity. Pending prosecution means the time during which the alien is detained for the purpose of securing his presence at a potential criminal prosecution, whereas pending deportation means detention for the purpose of removing him from the country.

The legislative history of § 3585 does not shed any additional light on whether ICE detention pending criminal prosecution constitutes "official detention," but similarly it does not contain any indication that Congress intended the statute's words to have a different import than their plain meaning.[5] Thus, we conclude that the relevant inquiry to

---

[4] 8 U.S.C. §§ 1226(a)(1); 1231(a)(2).

[5] Early versions of the Sentencing Reform Act of 1984, which rewrote and recodified the sentencing credit statute, creating § 3585, included a definition of "official detention" that encompassed "detention by a public servant . . . pending deportation"—a far more expansive definition than the one we adopt. See, e.g., Criminal Code Reform Act of 1981, S. 1630, 97th Cong. § 111 (1981). The entirety of the definitions section, however, was deleted prior to enactment.

In *United States v. Wilson*, the Supreme Court held that the deletion of a reference to the Attorney General during the recodification of the sentencing credit statute effected no change in the statute's meaning. See 503 U.S. at 336 (concluding the reference "was simply lost in the shuffle"). The Court noted that Congress's replacement of the term

determine whether a period of ICE detention constituted "official detention . . . as a result of the offense for which the sentence was imposed" is whether the detainee was being held pending a potential criminal prosecution, rather than pending deportation in the ordinary course—that is, whether the alien's detention status had changed from pending deportation, which it was at the time he was first detained, to pending prosecution.

A number of considerations support our interpretation of the statute as having the meaning its plain words afford it. First, issues of sentencing credit arise only in cases in which the alien *has in fact* been criminally prosecuted and convicted, so the scope of our holding is necessarily circumscribed. In such cases, we always know that the government elected to pursue criminal prosecution, rather than to attempt to deport the alien forthwith. Otherwise, there would be no criminal sentence to credit. The only question is when the alien's detention status changed from detention pending deportation to detention pending potential prosecution.

Second, federal immigration officers and federal prosecutors work together closely to facilitate criminal prosecutions of aliens. *See* 8 U.S.C. § 1226(d)(1) (requiring cooperation between the Attorney General and federal, state, and local authorities "with respect to the arrest, conviction, and release of any alien charged with an aggravated felony"); United States Customs and Border Protection Inspector's

---

"custody" with "official detention" might have constituted a meaningful change, *id.* at 337, but it subsequently held that the change was a technical one that did not alter the meaning of the statute. *See Reno v. Koray*, 515 U.S. 50, 59–60 (1995).

Field Manual § 18.11 (2008) (providing detailed instructions to immigration officers regarding development of a case for criminal prosecution in cooperation with U.S. Attorneys); United States Immigration and Customs Enforcement Detention and Deportation Officer's Field Manual § 14.8 (2006) (providing instructions on preserving a case for criminal prosecution after reinstatement of removal). It is typically ICE's referral of a case to a U.S. Attorney that prompts the filing of charges for an immigration-status offense, and it is ICE's delay of deportation and delivery of the alien to the U.S. Attorney that enables criminal proceedings to occur. Indeed, the record in this case is illustrative of the fact that prosecutions for immigration-status crimes are a collaborative effort by immigration officers and prosecutors: the only evidence supporting the criminal complaint against Zavala filed in the Central District of California was an affidavit by an ICE deportation officer.

Given that prosecutions for immigration-status crimes result from cooperative efforts between the two sets of officials, it would be arbitrary to afford sentencing credit when the government elects to hold a defendant in USMS detention while it builds its criminal case but not when the government elects to hold a defendant in ICE detention while it does so. Under the district court's hardline rule that immigration detention never constitutes "official detention," two identically situated defendants would serve sentences of differing lengths based solely on the federal government's election of ICE rather than USMS detention pending potential criminal prosecution. Individuals in immigration detention, unlike those in USMS detention, could be subjected to lengthy periods of detention with no offsetting sentencing credit. Further underscoring the arbitrariness of a blanket rule denying sentencing credit any time aliens are in ICE

detention is the fact that BOP itself has afforded credit to aliens held in state detention pending federal prosecution, *see* § 3585(b)(2); U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28, 1-14A, 1-21 (Feb. 14, 1997); *Abpikar v. Lompoc Federal Bureau of Prisons*, No. CV 12-00827 MMM, 2012 WL 3777156, at *2 (C.D. Cal. July 16, 2012), *adopting report & recommendation*, 2012 WL 3776499 (C.D. Cal. Aug. 30, 2012), and ICE detention often occurs in a state facility. *See, e.g.*, *Galan-Paredes v. Hogsten*, No. 1:CV-06-1730, 2007 WL 30329, *1 (M.D. Pa. Jan. 3, 2007) (defendant held in county jail in ICE detention status). In other words, two individuals could receive different sentencing credit and thus serve different length sentences based solely on which agency was nominally in charge of their detention in the same facility.[6]

## B.

The Government makes four arguments in support of its contention that a defendant is never entitled to sentencing credit for time spent in ICE detention: (1) that Supreme Court precedent interpreting § 3585(b) in the context of pretrial release under the Bail Reform Act controls the instant case; (2) that BOP's interpretation of § 3585(b) precludes sentencing credit for any and all time spent in immigration detention; (3) that sentencing credit is inappropriate because deportation proceedings are classified as civil; and (4) that

---

[6] The dissent's approach, under which a person held in ICE detention pending criminal prosecution would receive credit only if criminal charges have already been filed perpetuates this arbitrary disparity. When police officers arrest a criminal suspect, sentencing credit begins at the time of arrest, rather than when formal charges are filed. *See, e.g.*, BOP Program Statement 5880.28 at 1-21.

requiring BOP to work with ICE to calculate sentences would be unworkable. We reject these arguments.

The Government argues that *Reno v. Koray*, 515 U.S. 50 (1995), controls the instant case, but *Koray*'s holding was far narrower. The question presented to the Court by the grant of certiorari was "whether a federal prisoner is entitled to credit against his sentence under § 3585(b) for time when he was 'released' on bail pursuant to the Bail Reform Act of 1984," and the Court held that release on bail to a private community treatment center did not constitute "official detention." *Id.* at 54, 65. Although the release on bail at issue in *Koray* included restrictive conditions, it was clear that under the terms of the Bail Reform Act the defendant was "released" from official detention to a private facility. *Id.* at 59. In the instant case, it is equally clear that under the relevant statutes, detention by immigration officials constitutes "detention" and not "release." *See* 8 U.S.C. §§ 1226(a)(1)–(2), 1231(a)(2).[7]

Despite dicta to the effect that official detention meant detention in a facility under the control of BOP, *see* 515 U.S. at 58, *Koray* had no occasion to address immigration detention, and it expressly declined to reach cases in which a

[7] The dissent asserts that we adopt different definitions of "official detention" with respect to ICE detention and community treatment centers. Not so. To recapitulate: *Koray* held that a person *released* to a community treatment center is not *detained*. We hold that where a person is *detained* by ICE, § 3585(b) may apply. Certainly where a person is *released* on bond by ICE, it does not.

Nor do we agree with the dissent's contention that because the Immigration Nationality Act and the Sentencing Reform Act were created by different legislation, we should not presume that Congress intended for them to be construed harmoniously.

defendant is held in detention in an official facility not operated or controlled by BOP. The Court expressly stated that "BOP often grants credit under § 3585(b) for time spent in *state* custody, even though the defendant was *not* subject to the control of BOP. These situations obviously are not governed by reference to a [Bail Reform Act] § 3142 'release' or 'detention' order. . . . [B]ecause the only question before us is whether a defendant is in 'official detention' under § 3585(b) during the time he is 'released' on bail *pursuant to the Bail Reform Act of 1984*, we need not and do not rule here on the propriety of BOP's decision to grant credit under § 3585(b) to a defendant who is denied bail *pursuant to state law* and held in the custody of state authorities." 515 U.S. at 63 n.5 (citation omitted).**[8]** A fortiori, *Koray* did not determine that immigration detention must be under the control of BOP in order to constitute "official detention"; rather, it left open the question we now answer: whether detention by immigration officials can constitute

---

**[8]** The dissent asserts that we make too much of the statements in *Koray* pertaining to credit for state detention and that "official detention" in § 3585(b) is in all circumstances limited to detention under the control of BOP, USMS, or the Attorney General of the United States because that is the detention referred to as "official detention" in § 3585(a) and other provisions of the Sentencing Reform Act—the enactment that included the Bail Reform Act. We conclude, however, that we must abide by the Supreme Court's statement that "situations [in which "the defendant was *not* subject to the control of the BOP"] *obviously* are not governed by reference" to the Bail Reform Act. *Koray*, 515 U.S. at 63 n.5. (second emphasis added). It is equally obvious that such situations are not governed by reference to other provisions of the Sentencing Reform Act pertaining to inmates in federal prisons.

"official detention." We conclude that it can and that in this case it does.[9]

Next, the Government argues that BOP's Program Statement interpreting § 3585(b) precludes sentencing credit for *all* time spent in immigration custody, and that the Program Statement is entitled to deference. Congress delegated responsibility for the initial computation of sentences to the Attorney General, *see United States v. Wilson*, 503 U.S. 329, 333 (1992), who has in turn delegated that authority to BOP. *See* 28 C.F.R. § 0.96. We need not, however, reach the question of administrative deference.[10]

---

[9] Even if *Koray* required a defendant to be under the control of BOP, USMS, or the Attorney General in all circumstances to be eligible for sentencing credit as the dissent contends, our colleague overlooks the dispositive fact that when *Koray* was decided in 1995 (and when BOP adopted its Program Statement), all immigration detainees—whether charged with a crime or not—were indeed within the control of the Attorney General. The Immigration and Nationality Service (INS) was in the Department of Justice and the Department had jurisdiction over immigration matters until 2002, when the Attorney General's authority over immigration, including over the INS, was transferred to the Secretary of the newly formed Department of Homeland Security. *See Establishment of Department; replacement of Immigration and Naturalization Service; transfer of functions*, 3A Am. Jur. 2d Aliens and Citizens § 35 (George Blum et al. eds., 2015). Surely the transfer of INS to a new, comprehensive agency designed to cover national security matters did not change the nature of its control over immigration detention. Nor does it matter that INS was reorganized to be part of a newly created federal department reporting to the Secretary of Homeland Security, who exercises the authority over immigration matters that the Attorney General formerly did.

[10] Under *Tablada v. Thomas*, the BOP Program Statement would be entitled to *Skidmore*, rather than *Chevron*, deference if it addressed the question presented. *See* 533 F.3d 800, 806 (9th Cir. 2008) (applying *Skidmore* deference to the interpretation of the good-time credit statute

BOP's Program Statement does not speak to situations in which ICE detains an alien pending criminal prosecution—potential or otherwise. The Government's claim that the Program Statement establishes a blanket no-credit rule is thus incorrect.

BOP Program Statement 5880.28 provides:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 *pending a final*

contained in the same BOP Program Statement). Even if the BOP Program Statement precluded sentencing credit for any and all time spent in immigration detention, as the Government asserts, we would find this interpretation of the statute unpersuasive under *Skidmore*. When applying *Skidmore* deference, "[a]mong the factors we consider are the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Id.* (internal quotation marks and brackets omitted). The BOP Program Statement "does not purport to carry the force of law and was not adopted after notice and comment," *id.*, and the closest it comes to giving any explanation for its interpretation of the statute is the inclusion of three case citations. *See* BOP Program Statement 5880.28 at 1-15A. All three cases cited involved claims of constitutional error committed in the course of deportation proceedings and none of them involved sentencing credit. Rather, the cited cases simply denominate deportation proceedings as "civil" proceedings. *See Ramirez-Osorio v. INS*, 745 F.2d 937 (5th Cir. 1984); *Shoaee v. INS*, 704 F.2d 1079 (9th Cir. 1983); *Cabral-Avila v. INS*, 589 F.2d 957 (9th Cir. 1978). As discussed *infra*, that deportation proceedings are classified as civil has no bearing on whether a criminal defendant is entitled to credit toward his criminal sentence. Thus, even if the Government's reading of the Program Statement were correct, it would lack the logic, expertise, and thoroughness needed to trigger deference to an agency's interpretation of a statute.

> *determination of deportability*. An inmate
> being held by INS *pending a civil deportation*
> *determination is not being held in "official*
> *detention" pending criminal charges*.

BOP Program Statement 5880.28 at 1-15A (emphasis added).
By its text, the BOP Program Statement does not deny
sentencing credit for any and all time an alien is held in
immigration custody, as the Government contends. At best,
it follows the same interpretation that we adopt: a line
between detention pending deportation, for which a defendant
is not entitled to sentencing credit, and detention pending
criminal prosecution, including the filing of criminal charges,
for which a defendant is entitled to sentencing credit.[11] At
worst, the Program Statement is silent as to whether a
defendant is entitled to sentencing credit where ICE detains
him pending potential criminal prosecution.[12]

---

[11] The dissent proclaims that the phrase "pending criminal charges"
refers solely to criminal cases in which charges have already been filed,
as opposed to cases awaiting the filing of charges. This argument is
without merit. In addition to the two definitions mentioned by the
dissent—one of which is wholly consistent with our opinion—"pending"
is also defined as "While awaiting; until" when used as a preposition.
Black's Law Dictionary (10th ed. 2014). *See also* Webster's New World
Dictionary 998 (3d Coll. ed. 1988) (including the following definitions:
"not decided, determined, or established"; "about to happen; impending";
"throughout the course or process of"; and "while awaiting; until"). We
decline to read into the Program Statement a distinction between cases in
which charges have already been filed and those in which they are being
explored, for the reasons previously discussed in Section II.A, *supra*.

[12] On at least four occasions reported in federal court decisions BOP has
voluntarily granted sentencing credit for time the defendant spent in ICE
detention where BOP determined that the detention was pending criminal
prosecution and not pending deportation—including one case in which the
detention preceded formal criminal charges. *See Sanchez v. Kruger*, No.

Although a number of district courts have relied on the BOP Program Statement to deny sentencing credit for time during which a defendant was held in ICE detention pending deportation proceedings, we do not read these cases as inconsistent with our holding in any respect. First, they engage in only cursory analysis, stating merely that the BOP Program Statement is entitled to deference and that deportation proceedings are classified as civil. Second, these cases all refer to persons being held in custody *pending deportation proceedings*.[13] Thus, these cases do not provide

3:CV-13-2025, 2014 WL 6886240, at \*2 (M.D. Pa. Dec. 4, 2014) (dismissing habeas petition as moot because BOP granted the defendant credit for the nineteen days prior to his indictment during which he was held in ICE detention pending criminal prosecution); *De Leon v. Copenhauer*, No. 1:12-CV-00976-BAM (HC), 2012 WL 5906551, at \*2 (E.D. Cal. Nov. 26, 2012) (noting that BOP granted the defendant credit for the time he was held pending prosecution, including thirty-eight days in ICE detention); *United States v. Tames*, CR No. 07-108-S, 2010 WL 93695, at \*1-2 (D.R.I. Jan. 8, 2010) (noting that BOP granted the defendant credit for five days during which he was held in ICE detention after criminal charges were filed but before the defendant was transferred to USMS custody); *Reyes-Ortiz v. Schultz*, CIV. 08-6386 (JEI), 2009 WL 4510131, at \*1 (D.N.J. Dec. 1, 2009) (noting that BOP granted the defendant sentencing credit for the time after the defendant "was ordered deported, but then continued to be held for prosecution," including credit for one day in ICE detention prior to his transfer into USMS custody). We have no reason to think that BOP did not grant similar credits for ICE detention in other instances that did not find their way into litigated federal cases.

[13] *See Solorzano-Cisneros v. Zych*, No. 7:12-cv-00537, 2013 WL 1821614, at \*3 (W.D. Va. April 13, 2013) ("The period . . . when Solorzano-Cisneros was held in ICE custody pending civil deportation review, does not constitute 'official detention' under pending criminal charges"); *Castro-Frias v. Laughlin*, No. 5:11cv174-DCB-RHW, 2012 WL 4339102, at \*2 (S.D. Miss. July 13, 2012), *adopting report & recommendation*, 2012 WL 4339216 (S.D. Miss. Sept. 20, 2012) (finding

support for the Government's argument that sentencing credit must be denied when ICE detains an alien pending potential criminal prosecution, as opposed to pending deportation.

The Government also argues that detention by ICE never constitutes "official detention" within the meaning of § 3585(b) because deportation is a civil proceeding. There is no dispute, however, that an alien being held for deportation, a civil proceeding, is not entitled to sentencing credit. The question here is whether an alien held by ICE for the purpose

---

claim moot but noting that "time spent in ICE custody awaiting deportation determination is not 'official detention'"); *Plummer v. Longley*, No. CIV.A. 10-171 ERIE, 2011 WL 1204008, at *3 (W.D. Pa. Mar. 28, 2011) (declining to disturb BOP's determination that "'official detention' under § 3585(b) does not include time spent in ICE 'civil custody' pending a final determination of deportability"); *U.S. v. Acosta-Leal*, No. 10-30036-DRH, 2010 WL 4608477, at *2 (S.D. Ill. Nov. 5, 2010) ("[A] person detained by INS while awaiting a deportation determination is not 'in official detention'"); *Similien v. United States*, No. 4:04-CV-162, 2007 WL 496637, at *1 (N.D. Ohio Feb. 8, 2007) ("During this time, Petitioner was detained by [ICE] while awaiting exclusion proceedings."); *Ghadiri v. Sniezek*, No. 4:06CV1765, 2006 WL 3023034, at *3 (N.D. Ohio Oct. 23, 2006) ("[D]uring the period of time Mr. Ghadiri was confined by the I.N.S. . . . he was in I.N.S. custody solely for the purpose of deportation proceedings."); *Alba-Tovar v. U.S.*, No. 05-1899-JO, 2006 WL 2792677, at *2 (D. Or. Sept. 22, 2006) ("Petitioner's custody . . . was due to pending administrative deportation proceedings and does not constitute 'official detention'"); *Fletcher v. Pugh*, No. CV 303-082, 2004 U.S. Dist. LEXIS 29450, at *5-6 (S.D. Ga. Apr. 16, 2004) ("[P]rior to the time of his indictment, Petitioner was only being held for disposition of civil proceedings that were not related to his eventual sentencing on the criminal charge of illegal re-entry."); *Decraene v. Winn*, No. 03-40212-GAO, 2004 WL 594976, at *2 (D. Mass. Mar. 23, 2004) ("[T]hat period of time during which petitioner was confined by the Immigration and Naturalization Service was not the result of the offense for which he was convicted . . . . To the contrary, he was in INS custody solely for the purpose of deportation proceedings." (emphasis omitted)).

of securing his attendance at a criminal proceeding is entitled to such credit. Thus, the Government's argument simply misses the point.

The Government's final argument is that requiring BOP to grant credit for time spent in ICE detention would be an unworkable regime because it would be "extremely difficult if not impossible to administer." *Zavala v. Ives*, No. CV 13-3603-JFW(E), 2013 WL 4763839, at *4 (C.D. Cal. Sept. 3, 2013). We reject this argument, for two reasons.

First, a number of district courts have already adopted the interpretation of § 3585(b) that we adopt today and granted credit for time spent in immigration detention pending potential prosecution, including pre-indictment periods as long as nearly two months.[14] These courts engaged in a fact-based inquiry to determine when the defendant's detention status changed from detention pending deportation to detention pending criminal prosecution. Courts are wholly competent to adjudicate when that status change occurred, as it is a factual inquiry that can often be resolved by examining ICE's administrative records and the ICE officers responsible for an alien's case. Indeed, BOP has at least on occasion voluntarily undertaken this inquiry itself. *See supra* note 12.

Second, BOP already grants sentencing credit for time spent in state or foreign custody where that time was not credited to another sentence. *See* § 3585(b)(2); *Koray*,

---

[14] *See Paz-Salvador v. Holt*, No. 3:10-CV-2668, 2011 WL 3876268, at *5 (M.D. Pa. Aug. 31, 2011) (31 days); *Reyes-Ortiz*, 2009 WL 4510131, at *1, 4 & n.2 (34 days); *Galan-Paredes*, 2007 WL 216699, at *1 (49 days); *Guante v. Pugh*, No. CV 305-92, 2005 WL 3867597, at *1 (S.D. Ga. Dec. 2, 2005) (47 days).

515 U.S. at 63 n.5; BOP Program Statement 5880.28 at 1-14A, 1-21. In order to facilitate the calculation of sentences in such circumstances, BOP has in place a policy for intergovernmental communications to investigate and verify claims of entitlement to sentencing credit. *See* BOP Program Statement 5880.28 at 1-26 ("Proper documentation will consist of written documentation . . . from any law enforcement agency (including probation officers). This includes verified phone, fax, or teletype messages, PSI, Rap Sheet, Booking Sheets, SENTRY, USM Form 129, etc."). If anything, it should be easier, not harder, to coordinate an information exchange between two federal government actors—BOP and ICE—than it is to coordinate between state and federal or foreign and federal actors.[15]

The fears that BOP and courts will be unable to administer a system that requires determining whether an alien's detention constituted detention pending potential criminal prosecution, as opposed to detention pending deportation, are thus without merit. We are confident in BOP's ability to comply with its statutory mandate with respect to detention by ICE—just as it does with respect to detention by state and foreign governments—and in the courts' ability to adjudicate disputes over sentencing credit should they arise.

---

[15] In fact, it may be markedly easier to determine eligibility for sentencing credit for ICE detention time than for state detention time, as the former situation does not present the double-counting problem present in the latter situation. *See* § 3585(b) (providing that a defendant may not receive credit against a federal sentence for detention time that has "been credited against another sentence").

## III.

For the forgoing reasons, we hold that an alien is entitled to credit toward his criminal sentence under § 3585(b) for the period during which ICE detained the alien pending potential criminal prosecution. We turn now to application of this principle to the facts of the instant case.

## A. Post-Indictment Detention

ICE detained Zavala during the period of time after dismissal of the first indictment for improper venue and before the filing of identical criminal charges in the proper venue. This detention occurred from December 11, 2010 through December 21, 2010. Zavala is clearly entitled to sentencing credit for this post-indictment period of ICE detention because it constituted detention pending criminal prosecution.

Most important, this time period occurred *after* the Government instituted criminal charges. Where ICE retains an alien in custody subsequent to an indictment or the filing of criminal charges and the alien is then convicted of those charges, we hold that the intervening period of detention is presumed to be for the purpose of criminal prosecution and the alien is entitled to sentencing credit.

The Government does not contend that during the post-indictment period ICE held Zavala pending deportation. The record makes clear that all governmental actors involved always intended that the criminal charges against Zavala be reinstated in the proper venue. The language of the Government's proposed order of dismissal indicated its intention to refile criminal charges in the proper venue,

expressly identifying that venue, and the refiled charges were supported exclusively by an ICE officer's affidavit. We thus hold that the district court erred when it denied Zavala sentencing credit for the post-indictment period during which ICE detained him pending criminal prosecution.

## B. Pre-Indictment Detention

As for the pre-indictment period, Zavala was subject to a reinstated order of removal on his first day in ICE custody, September 20, 2010, and he did not contest this order, meaning ICE could have deported him at any time thereafter. 8 U.S.C. § 1231(a)(5) (stating that "the alien shall be removed under the prior order at any time after the reentry"). ICE nonetheless continued to detain Zavala until October 6, 2010, when he was indicted for illegal reentry.

As we stated earlier, the BOP Program Statement does not bar Zavala from receiving sentencing credit during any period in which he was being detained pending potential prosecution. The record before us, however, does not show whether he was held pending potential criminal prosecution, and if so, for what part of the pre-indictment period. On the one hand, execution of a removal order is not required to be instantaneous, *see* § 1231(a)(1), and it is therefore possible that Zavala's continuing detention was related to the process of implementing the deportation order.[16] On the other hand, the process of indicting a criminal defendant is ordinarily not a one-day affair. Usually it requires some investigation and deliberation before a decision to indict (or to file a criminal complaint) is made by the criminal authorities, normally the

---

[16] We note that when Zavala was previously removed in 2006, ICE deported him just one day after it obtained the order of removal.

U.S. Attorney's Office. During that process, federal prosecutors and immigration officials often cooperate in determining whether criminal charges are warranted and particularly in ensuring the alien's presence at the criminal proceedings. Zavala is entitled to credit for the latter type of detention—detention for the purpose of ensuring his presence at his prosecution—but not for the former type—detention for the purpose of executing the removal order.[17] Because the district court erred in holding that as a matter of law Zavala could not receive *any* credit toward his sentence for time spent in ICE detention, it failed to consider whether that detention was pending deportation or pending potential prosecution. We therefore remand for the district court to determine in the first instance whether and when, during the pre-indictment period, Zavala's detention status changed from detention pending deportation to detention pending potential prosecution.

We hold that, on remand, the government has the burden of proving that the pre-indictment detention was for the

---

[17] To be clear, we disagree with the statement in *Abpikar v. Lompoc Federal Bureau of Prisons* relied upon by the magistrate judge in this case. The magistrate judge held, quoting *Abpikar*, that the filing of "a charge [by a U.S. Attorney] or [a] determination of probable cause" by a grand jury is required before detention can constitute "official detention" within the meaning of § 3585(b). *Abpikar*, 2012 WL 3777156, at *3. First, in cases concerning detention by law enforcement officials, sentencing credit is awarded from the time of arrest, not from the time that charges are formally filed or an indictment returned. *See* BOP Program Statement 5880.28 at 1-21. Second, as explained *supra*, the approach we adopt has already been successfully applied to detention by immigration officials, and BOP already regularly calculates sentencing credit in the analogous state detention context. Moreover, the *Abpikar* approach (also propounded by the dissent) has no basis in the text of the statute and would fail to address arbitrary sentencing disparities.

purpose of deportation rather than potential prosecution. This burden is justified for two reasons. First, it furthers judicial efficiency in light of the "judicial estimate of the probabilities of the situation." 2 McCormick on Evidence § 337 (7th ed. 2013). After all, we know how this story ends: Zavala was not deported, but prosecuted. This is so in all sentencing credit cases arising under § 3585(b). In such cases, it is always clear that at some point in time the government elected to pursue the possibility of prosecution, rather than to deport the alien in the normal course. Had it chosen otherwise, the question of credit toward a criminal sentence would not arise. In other words, the most likely outcome is that the alien is entitled to some sentencing credit beyond that credited from the date on which the indictment or formal charges were filed.

Second, evidence as to the reason for an alien's detention "is peculiarly accessible to one of the parties," Edmund M. Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof*, 47 Harv. L. Rev. 59, 79 (1933). The government unquestionably has superior access to the critical information—i.e. reports of investigation by ICE officers, records of the criminal investigation component of ICE, sworn statements by investigating officers, the time and contents of communications between ICE officers and prosecutorial agencies, and so forth—the information that is determinative of when an alien's detention status changed from detention pending deportation to detention pending potential prosecution. The fact-finding required on remand is not some amorphous "inquiry into the elusive intent of individual [ICE] officers," as the dissent contends. Dissent at 12. Rather, it is primarily a matter of reviewing records that ICE already maintains in the ordinary course of its operations.

For example, the government could meet its burden of proving that pre-indictment detention was for the purpose of deportation rather than potential prosecution by producing evidence that  proceedings to determine deportability were actively being pursued, or, where a final removal order has already been obtained (as in this case), that it was in the process of making logistical arrangements for the detainee's departure from the country, and that it was not merely awaiting action by the U.S. Attorney's Office or helping build a criminal case.[18]

We accordingly remand for the district court to conduct an evidentiary hearing. The relevant question on remand is whether the Government can establish that Zavala's detention from September 20, 2010 to October 5, 2010 was not for the purpose of potential prosecution.

## IV.

We hold that when immigration officials detain an alien pending potential prosecution, the alien is entitled under § 3585(b) to credit toward his criminal sentence. We also hold that an alien is entitled to credit for all time spent in ICE detention subsequent to his indictment or the filing of formal criminal charges against him. Finally, we hold that where a factual dispute exists, the district court must hold an evidentiary hearing as to whether an alien's detention by ICE

---

[18] To be clear: the foregoing are merely examples of how the government could meet its burden of proving that detention was not for the purpose of securing the detainee's presence at a criminal prosecution. We, of course, do *not* imply in any way that "official detention" can occur only subsequent to a final removal order. Quite the contrary. To the extent that the dissent suggests otherwise, it simply misunderstands our opinion.

prior to the date of his indictment or the filing of criminal charges against him constituted detention pending prosecution.

**REVERSED AND REMANDED.**

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

At issue is how much of the time that an alien spends in the custody of the U.S. Immigration and Customs Enforcement Agency (ICE) prior to the commencement of a criminal sentence must be credited against that alien's sentence for illegal reentry. I agree with the majority that, under 18 U.S.C. § 3585(b), an alien is eligible for credit for all time spent in ICE custody from the day he or she is indicted or criminally charged. On that day, the alien becomes subject to the U.S. Attorney General's control and thus is in "official detention" within the meaning of § 3585(b) as the Supreme Court and the U.S. Bureau of Prisons (BOP) have interpreted that term. *Reno v. Koray*, 515 U.S. 50, 55–56 (1995); U.S. Dep't of Justice, BOP Program Statement No. 5880.28(c).

The majority, however, also adopts a broader interpretation of § 3585(b), that "an alien is entitled to credit toward his criminal sentence . . . for the period during which ICE detained the alien pending *potential* criminal prosecution." Maj. Op. 22 (emphasis added). I dissent from this broader ruling and its application to this case because it (1) contravenes Supreme Court precedent, (2) violates the rules of statutory construction, (3) fails to defer to the BOP's

reasonable interpretation of § 3585(b), and (4) is prospectively problematic. Left in place, the rule will generate a slew of habeas petitions that will require district courts to conduct time-consuming evidentiary hearings to determine the elusive moment when pre-indictment immigration detention changed from "pending deportation" to "pending potential prosecution."

## I.

The majority's broad rule, that time spent in ICE custody pending potential criminal prosecution is "official detention," is inconsistent with *Reno v. Koray*. In that case, the Supreme Court held that time spent by a prisoner at a community treatment center after he pleaded guilty, but before he was sentenced, was not "official detention" within the meaning of § 3585(b). In so holding, the Court ruled that "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility,' § 3621(b), and who were subject to BOP's control." *Koray*, 515 U.S. at 58.[1]

The majority's interpretation of § 3585(b) cannot be reconciled with *Koray*. More than the "potential" for criminal prosecution is required before an alien in ICE

---

[1] While the Court used the words "subject to BOP's control," the opinion as a whole makes clear that the Court also meant, more broadly, "subject to the discretion of the U.S. Attorney General, the Bureau of Prisons, or the U.S. Marshals Service." *Koray*, 515 U.S. at 60 n.4 (quoting BOP Program Statement No. 5880.28(c) (July 29, 1994)). I use the shorthand "subject to the Attorney General's control," because the Attorney General's control is inclusive of that of the BOP and the U.S. Marshals Service (USMS), which operate under the Department of Justice.

custody becomes subject to the Attorney General's control. The potential for prosecution of an alien in civil immigration custody exists from the moment an alien is apprehended by ICE. Rather, for an alien in ICE custody to be in "official detention" within the meaning of § 3585(b), as the Supreme Court has interpreted that term, the alien must be indicted or criminally charged.[2]  Only then is an alien in ICE's custody "subject to [the Attorney General's] control" as a result of his or her immigration offense, and thus entitled to credit against his or her sentence. *Koray*, 515 U.S. at 58.  An ICE officer may play a part in building a criminal case, but the emergent intention of an ICE officer to refer a case for criminal prosecution has no bearing on whether an alien in ICE custody is subject to the Attorney General's control and thus in "official detention."

A review of the Supreme Court's extensive analysis of the term "official detention" in *Koray* exposes the majority's error.  The Court looked to § 3585(b)'s larger statutory scheme, including other sentencing provisions showing that "official detention" means "in a penal or correctional facility" that is "subject to BOP control."  *Id.* at 58–59 (internal quotation marks omitted).  Specifically, the Supreme Court looked to "§ 3585(a) and related sentencing provisions," and observed:

---

[2] The government has not developed an argument that time spent in ICE custody is not "official detention" because ICE facilities are not penal or correctional facilities.  Accordingly, I assume that ICE facilities qualify as penal or correctional facilities even though immigration detention is civil in nature.  *See* 18 U.S.C. § 3142(a), (d) (indicating that "detention" within the meaning of the Bail Reform Act may include an immigration official's custody of "a person charged with [a criminal] offense").

> Section 3585(a) provides that a federal
> sentence "commences" when the defendant is
> received for transportation to or arrives at "the
> official detention facility at which the
> sentence is to be served." Title 18 U.S.C.
> § 3621, in turn, provides that the sentenced
> defendant "shall be committed to the custody
> of the Bureau of Prisons," § 3621(a), which
> "*may designate any available penal or
> correctional facility* . . . , whether maintained
> by the Federal Government or otherwise . . . ,
> that the Bureau determines to be appropriate
> and suitable," § 3621(b) (emphasis added).
> The phrase "official detention facility" in
> § 3585(a) therefore must refer to a
> correctional facility designated by the Bureau
> for the service of federal sentences, where the
> Bureau retains the discretion to "direct the
> transfer of a prisoner from one penal or
> correctional facility to another." § 3621(b).

*Id.* at 58 (alterations and emphasis in original).

The Court explained that its "reading of § 3585(a) is
reinforced by other provisions governing the administration
of federal sentences," including language in § 3622 showing
that "official detention" means "subject to BOP control." *Id.*
Reasoning that "the words 'official detention' should bear the
same meaning in subsections (a) and (b) of § 3585 as they do
in the above related sentencing statutes," the Court found that
§ 3585(b) turned on whether the detention was subject to the
control of the BOP (or the U.S. Attorney General or USMS).
*Id.* It ruled that "credit for time spent in 'official detention'
under § 3585(b) is available only to those defendants who

were detained in a 'penal or correctional facility,' § 3621(b), and who were subject to BOP's control." *Id.* The Court explained that "[t]he context and history of § 3585(b) also support this view," as does the BOP's Program Statement No. 5880.28(c), which is due deference. *Id.* at 59–61.

Recognizing that its rule is inconsistent with the rule announced in *Koray*, the majority attempts to relegate the Supreme Court's rule to the status of dicta. The majority relies on a footnote in *Koray* where the Court declined to address the propriety of the BOP's policy of granting "credit under § 3585(b) to a defendant who is denied bail pursuant to state law and held in the custody of state authorities." *Id.* at 63 n.5. But what the Supreme Court did rule was not undone by a footnote stating what applications of that rule the Court declined to address. Thus, the broad rule announced by the majority in this case, which does not require an alien's custody by ICE to be subject to the Attorney General's control to qualify as "official detention" under § 3585(b), contravenes *Reno v. Koray*.

## II.

The majority's broad rule also runs contrary to the rules of statutory construction. As explained above, *Koray*'s interpretation of § 3585(b) followed the "normal rule of statutory construction that identical words used in different parts of the same act are [presumed] to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (internal quotation marks omitted). The majority's interpretation of § 3585(b) violates this rule by interpreting "official detention" in § 3585(b) not to mean "subject to [the Attorney General's] control," even though that is part of the

term's meaning as it is used in subsection § 3585(a). *Koray*, 515 U.S. at 58.

In doing so, the majority violates an even more fundamental rule of statutory construction, the rule that prohibits "[a]scribing various meanings to a single iteration" of a statutory term in different applications. *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (internal quotation marks omitted); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (rejecting "the dangerous principle that judges can give the same statutory text different meanings in different cases"). The majority holds that "official detention" in § 3585(b) means one thing (what the majority says it does) in the context of custody by ICE but another thing (what the Supreme Court said it does in *Koray*) in the context of custody by a community treatment center. Such an approach to understanding a statute is in tension with the rule of law and should be rejected. *Clark*, 543 U.S. at 382 (to accept that the same statutory provision could have multiple meanings "would render every statute a chameleon, its meaning subject to change . . . in each individual case").

It is true that, in *Koray*, the Supreme Court also construed § 3585(b) in conjunction with the Bail Reform Act of 1984, which is not directly at issue here.[3] *Koray*, 515 U.S. at 56–57. Doing so made sense "because the Bail Reform Act of 1984 was enacted in the same statute as the Sentencing Reform Act of 1984, of which § 3585 is a part." *Id.*

---

[3] It does not follow that the Supreme Court's extensive analysis of the Sentencing Reform Act, which is at issue here, and resultant ruling regarding § 3585(b)'s meaning, which is controlling here, may be ignored or distinguished as only applicable to custody in a community treatment center. *See Koray*, 515 U.S. at 55–65.

Accordingly, Congress could be presumed to have "legislated with reference to" the terms of § 3585 in drafting the Bail Reform Act. *Id.* at 57 (quoting *Gozlon–Peretz v. United States*, 498 U.S. 395, 408 (1991)). The same cannot be said of the Immigration and Nationality Act (INA). To the extent that immigration law is relevant to construing § 3585, it only confirms that immigration detention is civil rather than criminal in nature. *See Cabral-Avila v. INS*, 589 F.2d 957, 959 (9th Cir. 1978).

The majority contradicts itself in attempting to align the terms "detention" and "release" in the INA with the same terms in the Bail Reform Act. Maj. Op. 13 (citing 8 U.S.C. §§ 1226(a)(1)–(2), 1231(a)(2)). First, as the majority later states, these terms of the Bail Reform Act "obviously" do not apply to civil immigration custody. *Id.* at 14 n.8. Second, if Congress intended immigration "detention" within the meaning of the INA to be "official detention" within the meaning of the Sentencing Reform Act, then all time spent in ICE custody would be entitled credit. The majority rejects this proposition.[4]

---

[4] Indeed, the Bail Reform Act supports the view that an alien in ICE custody is not in "official detention" before criminal charges are filed. The Act requires that "a person charged with [a criminal] offense" and awaiting trial, disposition of appeals, or commencement of his sentence be either "released" or "detained." 18 U.S.C. § 3142 (a); *see also id.* § 3143. Thus, a person, including an alien in immigration custody, *id. § 3142(d),* becomes subject to official detention once "charged with [a criminal] offense." *Id.* §§ 1342, 1343. The INA, by contrast, only addresses the "detention" or "release" of a person who has been "arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Such civil immigration "detention" is not, as the majority agrees, "official detention" within the meaning of § 3585(b).

By giving the term  "official detention" a different meaning in a different category of cases to which it applies, the majority "invent[s] a statute rather than interpret[s] one." *Clark*, 543 U.S. at 378.  The majority's invention might be sensible, but the job of judges is to interpret statutes, not to rewrite them.

## III.

The majority also oversteps the judicial role by failing to provide any deference to the interpretation of "official detention" set forth in the BOP's Program Statement. According to the BOP:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability.  An inmate being held by INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.

BOP Program Statement 5880.28, at 1-15A.

The government appears to contend that this part of the program statement means that an alien is never in "official detention" while in ICE custody.  I join the majority in declining to defer to this unreasonable interpretation of the program statement's interpretation of a statutory term.

But the program statement itself is "entitled to some deference." *Koray*, 515 U.S. at 61.  By its text, the program statement does not deny sentencing credit for all time an alien

is held by ICE. Rather, a reasonable inference from the program statement is that an alien in ICE custody is in "official detention" once "criminal charges" are "pending." BOP Program Statement 5880.28, at 1-15A. As used, "pending" logically means filed but not yet resolved. *See* Black's Law Dictionary (10th ed. 2014) (used as a preposition, as it is here, "pending" primarily means "1. Throughout the continuance of; during <in escrow pending arbitration>"; used as an adjective, it primarily means "1. Remaining undecided; awaiting decision <a pending case>"). While the program statement is ambiguous when read in isolation, a reading of the statement as allowing credit for time spent in civil immigration custody once criminal charges are filed is confirmed by other parts of the same statement, which emphasize that "'official detention' [means] subject to the discretion of the Attorney General and the U.S. Marshals Service with respect to the place of detention." BOP Program Statement 5880.28, at 1-14F. An alien in ICE custody is subject to the Attorney General's control when criminal charges have been filed and remain pending.[5] At this point, the Attorney General has "discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" *Koray*, 515 U.S. at 58 (quoting § 3621(b)).

The majority errs by failing to defer to this interpretation of "official detention" set forth in the Program Statement, as

---

[5] The program statement does not say "pending criminal charg*ing*" or "awaiting the filing of charges" as the majority would prefer to read it. *See* Maj. Op. 17 n.11. As explained above, other parts of the program statement make this clear. The BOP's inclusion of the word "determination" in the phrase "pending a civil deportation determination" but omission of such a verbal noun from the subsequent phrase "pending criminal charges," also undermines the majority's view that the latter phrase anticipates some action, as in "awaiting the filing of charges."

it is a reasonable interpretation of an ambiguous statutory term that was provided by the agency Congress charged with administering that term. Indeed, it is an interpretation that the Supreme Court has accorded deference. *Koray*, 515 U.S. at 61; *see also Tablada v. Thomas*, 533 F.3d 800, 806–07 (9th Cir. 2008).

## IV.

The majority's interpretation of "official detention" has the additional flaw of being difficult for district courts to administer. The majority remands "for the district court to determine in the first instance whether and when, during the pre-indictment period, Zavala's detention status changed from detention pending deportation to detention pending potential prosecution." Maj. Op. 24. The majority directs "the district court to conduct an evidentiary hearing," but provides little guidance for determining when detention by ICE shifts from "pending deportation to . . . pending potential prosecution." *Id.* at 25, 26. Presumably the government would be required to put on evidence showing when an ICE official of sufficient rank or involvement in a petitioner's detention developed a sufficiently concrete intention to recommend criminal prosecution.

As the district court observed, this "interpretation of section 3585(b) would be extremely difficult . . . to administer." *Zavala v. Ives*, No. CV 13-3603-JFW E, 2013 WL 4763839, at *4 (C.D. Cal. Sept. 3, 2013). The majority dismisses this concern on the basis of four unpublished district court decisions granting credit for time spent in

immigration detention.**[6]** These four decisions, which until today were contrary to the overwhelming weight of authority,**[7]** are hardly representative of the stream of habeas petitions we can expect under the majority's rule. These decisions do not demonstrate that administering the rule will not burden district courts and the government by requiring fact-intensive inquiries into the purpose of an alien's detention. The fact that the BOP sometimes grants sentencing credit for time spent in state or foreign criminal custody does not negate the district court's practical concern

---

**[6]** *See* Maj Op. 20 n.14 (citing *Paz-Salvador v. Holt*, No. 3:10-CV-2668, 2011 WL 3876268 (M.D. Pa. Aug. 31, 2011); *Reyes-Ortiz v. Schultz*, CIV. 08-6386 (JEI), 2009 WL 4510131 (D.N.J. Dec. 1, 2009); *Galan-Paredes v. Hogsten*, No. 1:CV-06-1730, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007); *Guante v. Pugh*, No. CV 305-92, 2005 WL 3867597 (S.D. Ga. Dec. 2, 2005)).

**[7]** *See* Maj. Op. at 15–16 n.10 (collecting some such cases); *see also, e.g.*, *Madrigal v. United States*, No. CV 14-2033-CJC-E, 2014 WL 3101444 (C.D. Cal. July 2, 2014), *adopted*, 2014 WL 3055908 (C.D. Cal. July 2, 2014); *Abpikar v. Lompoc Fed. BOP*, No. CV 12–00827 MMM (RZ), 2012 WL 3777156 (C.D. Cal. July 16, 2012), *adopted*, 2012 WL 3776499 (C.D. Cal. Aug. 30, 2012); *United States v. Taymes*, No. CR 07-108-S, 2010 WL 93695 (D.R.I. Jan. 8, 2010); *see also United States v. Lopez*, 650 F.3d 952, 966 (3d Cir. 2011) (upholding as "not clearly erroneous" the district court's denial of sentencing credit for ICE custody from February 24 through June 16, 2009, even though on February 24 the ICE agent who then interviewed the detainee described the matter as "a criminal illegal reentry prosecution"); *Baselet v. Lappin*, No. CV 311-097, 2012 WL 1167142, at *4 (S.D. Ga. Mar. 7, 2012), *adopted sub nom. Baselet v. Wells*, 2012 WL 1166960 (S.D. Ga. Apr. 9, 2012) (limiting one of the four district court decisions that the majority cites). *Cf. Al-Marri v. Davis*, 714 F.3d 1183, 1187 (10th Cir. 2013), *cert. denied sub nom. Al-Marri v. Berkebile*, 134 S. Ct. 295 (2013) (lengthy pre-indictment detention was not "as a result of the offense for which the sentence was imposed" because it was based on independent authority to detain defendant as a witness or enemy combatant).

either. The BOP practice does not require an inquiry into the elusive intent of individual officers, and it does not allow civil detention to be deemed criminal in nature based on the intent of an official who lacks authority to criminally prosecute.

The disproportionate cost to benefit of the majority's rule is apparent in this case. Here, the difference between my perspective and the majority's concerns some fraction of the sixteen days that Zavala was held by ICE before the indictment was filed. Under the majority's approach, the district court will have to hold an evidentiary hearing probing the thought processes of ICE officials to determine when during these sixteen days Zavala's custody became due to "potential criminal prosecution."[8] I do not mean to discount the value of Zavala's time, but only to highlight the practical problems inherent to administering the majority's interpretation.[9]

---

[8] In applying its rule, the majority appears to limit its reach such that "official detention" may not occur until, at the earliest, "a final removal order" has issued. Maj. Op. 26. This hedge may have the effect of reducing the prospective burden on the district courts and the government of administering the rule. *But see id.* 26 n.18 (retreating from this hedge). Regardless, a fact-intensive inquiry into when, after a final deportability determination, ICE developed a sufficiently concrete intention to recommend criminal prosecution would still be required, at least when the government does not capitulate. I note that the majority's limitation of its rule further unravels whatever logic underlies its rule. The limitation looks to whether deportation proceedings are actively ongoing rather than to whether the government has decided potentially to pursue criminal prosecution.

[9] I acknowledge that, in some cases, aliens may spend inequitably lengthy periods of time in ICE custody before unlawful reentry charges are initiated. This case does not present an occasion to determine if a

The bright-line rule adopted by most courts, that ICE custody becomes "official detention" within the meaning of § 3585(b) when an alien is indicted or criminally charged, makes much more sense as a matter of efficient administration. Given competing, equally reasonable interpretations, it is safe to say that Congress intended the interpretation that would be less problematic prospectively. *Koray*, 515 U.S. at 64 (rejecting an interpretation of § 3585(b) that "would require a fact-intensive inquiry into the circumstances of confinement"). Moreover, a bright-line rule furthers Congress's stated interest in providing prisoners and the public with prompt, precise information about how much time a prisoner must spend in prison. S. Rep. No. 98–225, at 46 (1983) (recognizing the value of a "system of sentencing whereby the offender, the victim, and society all know the prison release date at the time of the initial sentencing by the court, subject to minor adjustments based on prison behavior called 'good time'"); *see also Koray*, 515 U.S. at 64 (preferring an interpretation of § 3585(b) that "provides both [the government] and the defendant with clear notice").[10]

---

defendant would be entitled to credit for "civil detentions which are mere ruses to detain a defendant for later criminal prosecution." *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993) (recognizing a possible exception to the general rule that the Speedy Trial Act does not apply to immigration detention).

[10] My consideration of prospective effects is not my principal reason for construing § 3585(b) to require custody to be subject to the Attorney General's control in order to qualify as "official detention." It is clear, though, that the majority's principal argument is one of policy, that similarly situated defendants should not be treated disparately. While this is a compelling policy concern, it is one that the Supreme Court has expressly dismissed in interpreting § 3585(b). *Koray*, 515 U.S. at 64. Indeed, the same kind of disparity in treatment for similarly situated defendants would arise under the majority's rule. Some defendants held

## V.

Despite my dissent from the majority's broad rule, I agree with the majority's narrower rule: "Where ICE retains an alien in custody subsequent to an indictment or the filing of criminal charges and the alien is then convicted of those charges, . . . the alien is entitled to sentencing credit" for the intervening period of detention. Maj. Op. 22. Applying this rule to this case, I would affirm the district court's denial of sentencing credit for Zavala's first stint in ICE custody—the sixteen days from his detainment by ICE until his indictment in the U.S. District Court for the District of Nevada for illegal reentry.[11]

When Zavala was indicted, however, he became subject to the Attorney General's control and, in fact, was promptly transferred to USMS custody. I would vacate and remand the

in ICE custody will receive sentencing credit because their custody is "pending potential criminal prosecution," while others—even some in the same facility, in the same cell—will not because they have not yet crossed that inscrutable line.

[11] I disagree with the majority's argument that, under *Koray*, all ICE custody is "official detention" under § 3585(b) because the now-abolished Immigration and Naturalization Service used to fall under the Attorney General's purview. Through the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), Congress removed immigration custody from the Attorney General's control. Congress legislated against the clear backdrop of the interpretation of § 3585(b) set forth in *Koray*, the government's construction § 3585(b) in the BOP Program Statement, and the government's longstanding practice of denying sentencing credit for time spent in immigration custody. We must presume that Congress was aware of these "settled judicial and administrative interpretation[s]" when it enacted the Homeland Security Act. *Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.*, 506 U.S. 152, 159 (1993).

district court's denial of sentencing credit for Zavala's second stint in ICE custody—the twelve days from his transfer back into ICE custody following dismissal of the criminal case against him due to improper venue until he was again charged for illegal reentry in the U.S. District Court for the Central District of California. This time period occurred after Zavala was indicted and initially became subject to the Attorney General's control. While no criminal case was actually pending against Zavala during this period, Zavala has made a prima facie showing that he remained subject to the Attorney General's control. *See Boniface v. Carlson*, 856 F.2d 1434, 1436 (9th Cir. 1988) (per curiam) (prisoner bears the burden to establish his entitlement to credit against his federal sentence for time served on his state sentence). As the majority notes, the language of the government's proposed order of dismissal indicated its intention to refile criminal charges in the proper venue and expressly identified that venue. The dismissal may be fairly characterized as the equivalent of a transfer of a filed criminal case from one district to another for purposes of applying § 3585(b). Accordingly, on the record presented, it appears that Zavala remained subject to the Attorney General's control and thus in "official detention" within the meaning of § 3585(b) during this time. On remand, unless the government rebuts this showing, Zavala would be due twelve days of credit toward his sentence for illegal reentry.

## VI.

"Official detention" in § 3585(b) does not take on different meanings in different contexts, as the majority would have it. Instead, in all contexts, a defendant is in "official detention" within the meaning of § 3585(b) when he or she is (1) detained in a correctional facility or similar

setting and (2) subject to the Attorney General's control. This interpretation of § 3585(b) is compelled by *Koray*, correct as a matter of statutory construction and administrative deference, and prudent in terms of prospective effects. Applying this rule, I would affirm in part, vacate in part, and remand to the district court.